THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAULETTE EZE and PAMELA EZE SYLVESTRE,
*personal representatives of the Estate of Presley Eze*;
ISAAC EZE and LORETTA EZE, *parents of Presley Eze*; ELENA EZE, *spouse of Presley Eze*; and VINCENT J. WARD*, Guardian Ad Litem of I.E., a minor child of Presley Eze,*

    Plaintiffs,

v.                                             No. 2:23-cv-00976-KWR-KRS

OFFICER BRAD LUNSFORD, and THE CITY OF LAS CRUCES,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Currently before the Court is the Motion filed by Defendant Brad Lunsford and Non-Party Witness Keegan Arbogast ("Moving Officers") seeking to quash a subpoena Plaintiffs issued to Dr. Peter DiVasto on the ground that the documents sought by the subpoena are protected from disclosure by the psychotherapist-patient privilege. (Motion to Quash, Doc. 46 at 3-5).[1] Alternatively, the Moving Officers ask the Court to "modify Plaintiffs' subpoena to only those documents which Dr. DiVasto previously produced to Movants' employer, and enter a protective order for those documents." (*Id.* at 6). For the reasons discussed below, the Court denies the Motion to Quash without prejudice because it is premature at this time to resolve the issue of whether any

---

[1] Although the subpoena is directed to Dr. DiVasto, Plaintiffs do not challenge the Moving Officers' standing to seek to quash it. *See Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995) ("A motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.").

of the documents sought by the subpoena are protected from disclosure by the psychotherapist-patient privilege.

## Discussion

This is a civil rights case brought by the surviving relatives of Presley Eze (Decedent) pursuant to 18 U.S.C. § 1983 and state law, in which Plaintiffs allege that a Las Cruces police officer unlawfully used deadly force against Decedent while investigating a complaint called into the Las Cruces police department by a local Chevron gas station. It is unnecessary for the Court to set forth the alleged facts in any further detail at this time, and indeed finds the discussion of those facts in the parties' respective filings to be largely irrelevant to the legal issue presented by the Motion to Quash. *See* (Docs. 46, 52-53, 56). That issue is whether Plaintiffs may obtain the records of Dr. Peter DiVasto, a licensed psychologist, who among other things conducted a pre-hiring psychological evaluation of the Moving Officers, the two officers involved in the fatal shooting.[2]

### A.   Request To Quash The Subpoena

The starting place for addressing the discovery issue before the Court is the basic principle that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). Plaintiffs' response to the Motion to Quash spends a great deal of time focusing on the relevance of the records to the claims in this case. *See* (Doc. 52 at 2-8, 11). But the Moving Officers do not

---

[2] One of the problems with the current Motion to Quash is that the exact nature of the records in Dr. DiVasto's possession is never spelled out. Dr. DiVasto states generally in his affidavit that he is a licensed psychologist who "conduct[s] pre-hire, post-critical incident and fitness for duty evaluations of police and corrections personnel," and also "conduct[s] psychotherapy with public safety personnel." (Doc. 46-2 ¶¶ 1-3). But outside of acknowledging that he conducted a pre-hire psychological evaluation of the Moving Officers (*id.* ¶¶ 5-6), he does not explain whether and in what capacity he dealt with the Moving Officers, although he suggests some sort of further interaction in fact did take place. *See* (*id.* ¶ 4 (stating that the Moving Officers "were my patients at various points throughout their law enforcement careers")).

challenge the subpoena on relevancy (or proportionality) grounds. *See* (Doc. 56 at 2 ("the relevance of Movants' psychological records … is not in dispute")). Therefore, for purposes of the Motion to Quash, the Court accepts that the records are relevant[3] and addresses only the disputed issue of privilege.

The Moving Officers rely on *Jaffee v. Redmond*, 518 U.S. 1 (1996), in arguing that the subpoena should be quashed because it seeks documents that are protected by the psychotherapist-patient privilege. In *Jaffee*, the United States Supreme Court recognized the existence of a psychotherapist-patient privilege under federal common law. *See* FED. R. EVID. 501 (providing that federal common law governs a claim of privilege not otherwise determined by another source of federal law, unless state law supplies the rule of decision, in which case state privilege law governs).[4] Specifically, *Jaffee* held that "confidential communications between a licensed psychotherapist and [his or] her patients in the course of diagnosis or treatment are protected from compelled disclosure." 518 U.S. at 15. To invoke the benefit of the privilege established by *Jaffee*, the Moving Officers bear the burden of establishing three elements: (1) the treating professional is a licensed psychotherapist or clinical social worker; (2) the patient's communications to that treating professional were confidential in nature; and (3) the confidential communications were

---

[3] Of course, relevance for discovery purposes does not mean that any ruling has been made that the evidence will be admissible at trial.

[4] In *Dorato v. Smith*, 163 F. Supp. 3d 837, 870-873 (D.N.M. 2015), the court grappled with the question of how to handle the privilege issue in a case such as this, which involves both federal and state law claims. *See id.* at 871 ("Where a privilege is asserted for evidence relevant both to federal and pendent state law claims, most circuit courts have either held that federal privilege law governs or approved of such an approach without explicitly adopting it."). After a thorough discussion of the issue, the *Dorato* court concluded that only federal law should be applied in such a case. *Id.* at 882-86. Neither party argues here that the Court should apply state privilege law to any aspect of the case. Accordingly, the argument is waived. *See Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1539 (10th Cir. 1992) (the court has no duty under the general waiver rule to consider an argument not raised properly in the briefing).

made during the course of diagnosis or treatment. *See Couser v. Somers*, No. 18-1221-JWB-GEB, 2022 WL 343659, at *5 and n. 24 (D. Kan. Feb. 4, 2022) (citing *United States v. Romo*, 413 F.3d 1044, 1047 (9th Cir. 2005) (stating that, to invoke the benefit of the psychotherapist-patient privilege, the party asserting the privilege bears the burden of showing the three elements required for the privilege to apply)).[5]

The Moving Officers make little to no attempt to show that the records sought by the subpoena are privileged under this three-part test. Instead, the Moving Officers primarily argue that the Court should quash the subpoena because the "private and public interests served by enforcing [their] psychotherapist/patient privilege outweighs the evidentiary benefit of denying it." (Doc. 46 at 4). The Court declines this invitation to engage in a balancing of interests to determine whether to quash the subpoena because the balancing test the Moving Officers seek to employ was explicitly *rejected* by the Supreme Court in *Jaffee*:

> We reject the balancing component of the privilege implemented by [the Seventh Circuit] and a small number of States. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. … An uncertain privilege, or one

---

[5] The Moving Officers appear to dispute they have the burden of proving the elements that would establish a privilege over Dr. DiVasto's records. *See* (Doc. 56 at 2-3 ("Plaintiffs … offer no authority which sets forth the allegedly unmet burden."); *id.* at 5 (same)). But the law is well established that "[t]he party seeking to assert … privilege has the burden of establishing its applicability." *In re Grand Jury Subpoenas*, 144 F.3d 653, 658 (10th Cir. 1998); *see also Sandia Vista L.L.C. v. Teresa, I L.L.C.,* No. CV 05-1154 WJ/LFG, 2006 WL 8443812, at *4 (D.N.M. Aug. 24, 2006) ("Sandia Vista is the party claiming the benefit of the privilege and therefore has the burden of establishing it."); *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 144 F.R.D. 396, 399 (D. Colo. 1992) ("The privilege is to be strictly construed. It is to be extended no more broadly than necessary to effectuate its purpose.") (citation omitted))). Similar principles apply to the assertion of a psychotherapist-patient privilege as an assertion of attorney-client privilege. *See Jaffee*, 518 U.S. at 8-10; *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229 (D. Mass. 1997) ("The attorney-client privilege and the psychotherapist-patient privilege are both 'rooted in the imperative need for confidence and trust.'" (quoting *Jaffee*)). "It is reasonable, therefore, to suggest that the scope of the two privileges should be similar." *Vanderbilt*, 174 F.R.D. at 229.

> which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.

*Jaffee*, 518 U.S. at 17–18 (internal quotation marks and citation omitted).[6]

In rejecting a balancing test for finding a privilege, the Supreme Court was actually providing *greater* protection for psychological records than if the lower court's balancing test had been adopted. That is, if the privilege attaches to the documents at issue, then the documents are protected from disclosure regardless of whether the evidentiary need for disclosure is great. But the privilege does not automatically attach to all patient-related documents in the possession of a psychotherapist. *Cf. United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (explaining that the mere fact that an attorney was involved in a communication does not render the communication privileged). For instance, "[f]acts regarding the very occurrence of psychotherapy, such as the dates of treatment, are not privileged." *Vanderbilt*, 174 F.R.D. at 230 ("The substance of the psychotherapist-patient communication is privileged. The fact that such communication took place is not."); *see also Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 551 (S.D. Ohio 2014) ("The privilege does not, however, cover the patient/psychotherapist's identity, the time of treatment, and/or the fact that any such treatment took place."). Moreover, the Supreme Court recognized two exceptions to the privilege: when the patient has waived the privilege, *Jaffee*, 518 U.S. at 15 n. 14, and when "a serious threat of harm to the patient or to others can be averted only

---

[6] In support of their balancing argument, the Moving Officers erroneously cite a portion of the *Jaffee* opinion in which the Court applied a balancing approach to decide whether to recognize a psychotherapist-patient privilege under federal common law. *See* 518 U.S. at 11-12. The cited discussion is inapposite to the issue in this case, which is not whether to recognize generally that a privilege exists under federal common law but whether the privilege attached to particular documents because the required elements to invoke the privilege are satisfied as to those documents. The Supreme Court expressly held that it was inappropriate to apply a balancing test to determine whether to allow the privilege to be invoked in any particular case. Rather, if the required elements are present, the privilege applies and the records will be protect from compelled disclosure.

by means of a disclosure by the therapist," *id.* at 18 n. 19. For these reasons, the relief requested by the Moving Officers—quashing the subpoena in its entirety—could very well be overbroad in protecting documents to which the privilege does not apply. The Moving Officers have not engaged in the three-part analysis required to determine whether the protection attaches to any specific document or category of documents sought by the subpoena. The Court declines to undertake that analysis for them. *See GJR Inv., Inc. v. Cnty. of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1989) (stating that a court *"*does not [have] … license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action").

Although the Court will deny the Motion for the reasons discussed above, the denial will be without prejudice, allowing the Moving Officers[7] to assert the psychotherapist-patient privilege as a basis for Dr. DiVasto to withhold specific documents that would otherwise be responsive to the subpoena. To do so, however, they must follow the correct procedure:

> To preserve the privilege, the asserting party must respond to discovery requests and assert privilege by submitting a proper privilege log which "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed—and ... in a manner that, without revealing information itself privileged

---

[7] The Court notes that the Moving Officers, as the patients whose records are at issue, are the only persons entitled to assert psychotherapist-patient privilege as a basis for preventing disclosure of their records as part of discovery in this matter. *See Ali v. Douglas Cable Commc'ns, Ltd. P'ship,* 890 F. Supp. 993, 995 (D. Kan. 1995); *cf. Sandia Vista L.L.C.*, 2006 WL 8443812, at *4 ("The privilege belongs to the client. The person who [received the privileged] … communication[s] may claim the privilege, but only on behalf of the client."). Dr. DiVasto seems to suggest that the Moving Officers' employer also "holds" some sort of privilege. *See* (Doc. 46-2 at 2, ¶¶ 7, 8 (asserting that the Moving Officers "hold the privilege for any post-critical incident evaluations, fitness for duty evaluations, or psychotherapy that I conducted with them," and that their "*employing agency* hold[s] the privilege for their pre-hire psychological evaluations" (emphasis added)). It is not clear to the Court what Dr. DiVasto means by the term "hold the privilege," but it is the law that decides what evidentiary privileges exist and who has the right to assert them. To the extent that Dr. DiVasto's statements were intended to reflect some factual matter of which he has personal knowledge concerning a confidentiality or nondisclosure agreement or promise between or among the Moving Officers, their employer, and/or himself (as opposed to a privilege accorded by law), he has not set forth those facts in his affidavit.

> or protected, will enable other parties to assess the claim." "[I]f a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived."

*Couser*, 2022 WL 343659, at *6 (citations omitted); *cf. Wetzel v. Diestel Turkey Ranch,* No. 1:20-CV-1213 DHU/KRS, 2022 WL 17584022, at *4 (D.N.M. Dec. 12, 2022) ("If Plaintiff withholds any responsive documents on the basis of privilege, she must provide a privilege log as required by Rule 26(b)(5)."). In other words, the Court "will wait until the parties have reviewed this opinion for guidance, created a privilege log, and developed disputes about the privileged status of specific documents within the larger pool of records." *Dorato*, 163 F. Supp. 3d at 888. The parties can then "raise the possibility of in camera review" if they are unable to resolve any disputes regarding specific documents. *Id.*

Turning to the aforementioned guidance, the Moving Officers should not assert privilege as to any document unless they can make a good faith argument that *all* of the elements needed for an assertion of privilege are satisfied with respect to the specific document withheld (as opposed to making blanket assertions about all the requested documents, or even any one requested category of documents unless the blanket assertion is justified as to the entire category). *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010) (holding that the burden of proving the attorney-client privilege applies to a particular communication rests on the party asserting the privilege, who must prove the privilege exists as to specific questions or documents, rather than a blanket assertion). That good faith argument must take into consideration the three elements required for the privilege to apply as well as the issue of waiver. As to the first element, there does not seem to be any dispute that Dr. DiVasto is a licensed psychologist. But there could very well be a dispute over the other two required elements: that the document in question contains confidential communications to Dr. DiVasto, and that those confidential communications were

7

made during the course of diagnosis or treatment. There also could be disputes about whether any privilege that originally attached to the document in question has since been waived. The Supreme Court left the task of fleshing out these requirements to the lower courts. *See Jaffee*, 518 U.S. at 18 ("Because this is the first case in which we have recognized a psychotherapist privilege, it is neither necessary nor feasible to delineate its full contours in a way that would govern all conceivable future questions in this area."). Therefore, the parties should look to case law applying *Jaffee* for further guidance. The Court will briefly set out some basic principles, however.

Courts have held that the "determinative factor [in] assessing the existence of a psychotherapist-patient privilege is whether [the] officer had a reasonable expectation of confidentiality relating to the ... counseling session or evaluation." *James v. Harris Cnty.*, 237 F.R.D. 606, 611-12 (S.D. Tex. 2006). For instance, it could be that "[a] police officer who is ordered to therapy, knowing that the therapist will report back to his or her superior, would have no expectation that his or her conversation was confidential" due to the fact that the officer expected that the therapist would produce a report or an evaluation from the ordered sessions for review by third parties." *Barrett v. Vojtas*, 182 F.R.D. 177, 181 (W.D. Pa. 1998); *see Dorato*, 163 F. Supp. 3d at 887 ("If a party is informed that evaluations, tests, therapy session notes, or any other information will be disclosed to his or her employer, that party cannot have a reasonable expectation of privacy.").

But the Court does not think that the fact that New Mexico has a statutory requirement for pre-employment psychological examinations for law enforcement officers necessarily dictates the result of the confidentiality inquiry as to all documents in Dr. DiVasto's possession (as Plaintiffs appear to suggest, Doc. 52 at 8). For instance, certain categories of documents called for by the subpoena might very well contain confidential material, notwithstanding that the documents were

8

created as a result of the requirements of the Moving Officers' employment. *See, e.g., Speaker ex rel. Speaker v. Cnty. of San Bernardino*, 82 F. Supp. 2d 1105, 1115 (C.D. Cal. 2000) (where the court rejected the plaintiff's argument that the privilege could not attach to counseling sessions that an employer required, explaining that the inquiry "turn[s] on the fact that the officer knew that the counselor's report would go to his employer"); *see also Caver v. City of Trenton*, 192 F.R.D. 154, 162 (whether Defendant Valdora went to a psychologist voluntarily, or was ordered to go, is not dispositive of the issue. What is critical is that Defendant Valdora was examined by a psychologist for the purpose of diagnosing whether he was suffering from some mental illness or emotional disorder that would render him unfit to be a police officer" and "was told and reassured that the psychological records and reports would be kept strictly confidential, and would not be disclosed to the City of Trenton personnel").[8]

As to the second required element for the privilege to apply, courts generally have determined whether a meeting occurred "in the course of diagnosis or treatment" by considering the totality of the circumstances. *Couser*, 2022 WL 343659, at *6. "Relevant factors might include the historical nature of the relationship between the individual and his confidante; the patient's purpose in making the communication; the nature of the contact; the timing and location of the communication; objective data, such as medical records, which corroborate the counseling contact; and whether mental health services were provided or requested during the communication." *Id.*

---

[8] The Moving Officers assert that they "did not consent for Dr. DiVasto to disclose information regarding how he determined their ability to return to duty, or any other confidential information to any party." (Doc. 56 at 4). But "[a]n attorney's assertions in a motion or brief are not evidence." *Putnam v. CaramelCrisp LLC*, No. 20 C 2074, 2024 WL 197361, at *3 n. 3 (N.D. Ill. Jan. 18, 2024) (citing inter alia *INS v. Phinpathya*, 464 U.S. 183, 188 n. 6 (1984)). As Plaintiffs point out, the Moving Officers did not submit an affidavit or declaration in support of their Motion To Quash. And whether they consented or not is a conclusion of fact that likely turns on an analysis of one or more pieces of evidence not currently before the Court.

(citing *United States v. Hudson,* No. CRIM.A. 13-20063-01, 2013 WL 4047145, at *5 (D. Kan. Aug. 9, 2013) (citing *Romo*, 413 F.3d at 1047))).

On the waiver issue, courts generally recognize that a party can waive the psychotherapist-patient privilege in two ways: by placing his or her medical condition at issue; or by releasing any expectation that he or she would otherwise have that the communications would remain private. *See Dorato*, 163 F. Supp. 3d at 886. There does not appear to be any indication that Defendant Lunsford has raised his mental health condition as an issue in the case, and certainly the non-party Moving Officer has not done so. Therefore, the waiver issue turns in this case on whether documents were actually disclosed to a third party with the Moving Officers' knowledge and consent. *See Couser*, 2022 WL 343659, at *6 (waiver turns on whether "the [patient] knew that the counselor's report would go to' another entity." (quoting *Dorato*, 163 F. Supp. 3d at 878 (quoting *Speaker ex rel. Speaker*, 82 F. Supp. 2d at 1115))); *see also Chavez v. City of Farmington,* No. CV 15-171 JCH/SCY, 2015 WL 13650097, at *2 (D.N.M. Nov. 25, 2015) ("An officer's belief that results of a psychological evaluation would only be disclosed to his or her employer and not the general public … does not preserve the privilege—once the communication is disclosed outside the 'magic circle' of persons to whom the privilege applies, the privilege is destroyed." (citing *U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (5th Cir. 1997) ("where the client chooses to share communications outside this magic circle, the courts have usually refused to extend the privilege."); and *Estate of Turnbow v. Ogden City,* 254 F.R.D. 434, 437-38 (D. Utah 2008) (officer's knowledge that communications made to a therapist would be disclosed to the officer's employer is sufficient to render the privilege inapplicable)). Whether this waiver rule would mean that privilege has been waived as to all of the documents requested by the subpoena, as Plaintiffs seem to argue, is unclear at this point. Nothing in the current record establishes which documents

requested by the subpoena were disclosed to the Moving Officers' employer and which were not.[9] It is certainly possible that some of the psychological records or information held by Dr. DiVasto were "generated for [the Moving Officers'] sole benefit, without any indication that they would be shared with a third party." *Dorato*, 163 F. Supp. 3d at 887 (noting that if "the City of Albuquerque required officers involved in police shootings to visit psychotherapists as an employee benefit, but did not receive the results of the examinations, the results need not be disclosed").

### B. Request For Alternative Relief

Lastly, the Court also denies at this time the Moving Officers' alternative two-pronged requested relief. The first prong of the Moving Officers' requested alternative relief is that the Court limit the documents that must be produced in response to the subpoena to only those documents Dr. DiVasto previously produced to the Moving Officers' employer. But that limit only addresses the waiver issue. It does not address the issue of whether some documents in question do not fall under the privilege in the first instance, either because they do not involve confidential communications between a patient and a psychotherapist, or because those communications were

---

[9] Plaintiffs argue that the Moving Officers have not met their burden of proof because "[n]either officer submits an affidavit and DiVasto does not relate whether they sought counseling because of City policy or completely on their own." (Doc. 52 at 11). It is true that Dr. DiVasto's affidavit raises more questions than it answers, which is why the Court is denying the Motion. But the affidavit does state that the only matters between him and the Moving Officers that were disclosed to the Moving Officers' employer were the officers' "pre-hire evaluations" and some sort of notification "informing their employers whether they were capable of returning to duty." (Doc. 46-2 at 2). As written, the affidavit seems to suggest there are other materials or records not disclosed to the employer. For instance, if Dr. DiVasto provided counseling to the Moving Officers for which no information was released to the Moving Officers' employer, the therapy notes from those counseling sessions would be protected by the privilege. *See, e.g., Jaffe*, 518 U.S. at 18 (holding that conversations between police officer and licensed therapist and notes taken during their counseling sessions were protected from compelled disclosure by the patient-psychotherapist privilege). The fact that this counseling occurred, however, is not privileged, and Dr. DiVasto therefore should disclose that information without revealing any confidential communications he received as a result.

not made during the course of diagnosis or treatment. As previously noted, the Moving Officers bear the burden of establishing that the privilege applies. Documents that were not actually disclosed to the Moving Officers' employer could still fall outside the privilege, if, for example, the Moving Officers were informed and agreed that any information exchanged between them and Dr. DiVasto might or could be disclosed to the employer, or if the information was not exchanged in the course of treatment or diagnosis.

The Court also finds it inappropriate at this time to enter a protective order preventing the disclosure outside this litigation of any documents produced in response to the subpoena. *See* (Doc. 46 at 6 (arguing that "[r]ecords that are not privileged may still be entitled to privacy protections.")). It is true that the court in *Chavez* agreed to "enter a protective order to remedy any confidentiality concerns raised by disclosure of the Officers' mental health records." *Chavez*, 2015 WL 13650097, at *3; *see also Dorato*, 163 F. Supp. 3d at 895 ("The Court has employed certain protections to minimize and/or mitigate the intrusion on Smith's privacy interests[,]" including "put[ting] in place a rigorous Protective Order" providing that "[t]he documents can be used only in this case and must be handled with care"). Courts routinely enter confidentiality orders, but typically upon the mutual agreement of the parties to the case. The Court thus would prefer that the parties meet and confer regarding the entry of a confidentiality order, and if agreement is reached, the Court will enter a stipulated order that is presented through the filing of an agreed motion. Should the parties not be able to reach agreement, the Court will have the benefit of briefing from both sides as to whether a confidentiality-type protective order is appropriate before making a decision. *See, e;g., Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1128–29 (10th Cir. 1999) (declining to rule on the basis of undeveloped or superficial arguments).

## Conclusion

Accordingly, Defendant Brad Lunsford's And Non-Party Witness Keegan Abrogast's Motion To Quash Subpoena To Dr. Peter DiVasto Or, In The Alternative, Modify Subpoena and Enter Protective Order **[46]** is **DENIED** without prejudice as set forth above.

IT IS SO ORDERED this 25th day of February, 2025.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE