## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**PAULETTE EZE** and **PAMELA EZE SYLVESTRE**,
*as personal representatives of the* Estate of
Presley Eze; **ISAAC** and **LORETTA EZE**,
*parents of Presley Eze*; **PETE "OBI" EZE**,
*brother of Presley Eze*; **ELENA EZE**, *spouse
of Presley Eze*; and **VINCENT J. WARD**,
*as Guardian Ad Litem, of* I.E., *a minor child of
decedent Presley Eze*,

       Plaintiffs,                            No. 2:23-cv-00976-KWR-KRS

v.

**CITY OF LAS CRUCES**; and
**BRAD JUSTIN LUNSFORD**, *in his individual
capacity*,

       Defendants.

### MEMORANDUM OPINION AND ORDER COMPELLING FORENSIC EXAMINATION OF DECEDENT'S CELL PHONE

Currently before the Court is Plaintiffs' Motion to Compel Defendant City of Las Cruces To Provide Complete Responses To Plaintiffs' Second Set of Requests For Production ("Motion"), filed on April 18, 2025. (Doc. 82). The Court resolved certain issues raised by the Motion in an order entered on August 19, 2025. *See* (Doc. 128). There is one remaining unresolved issue: whether the City of Las Cruces ("the City") should be compelled to produce the iPhone belonging to Presley Eze, Plaintiffs' decedent, for examination by Plaintiffs' forensic expert. The iPhone in question was retrieved by the Las Cruces Police Department ("LCPD") at the scene of the incident that occurred on August 2, 2022, when Mr. Eze was shot and killed by LCPD Officer Brad Lunsford. It has been in the LCPD's possession ever since. As set forth below, the Court will order

the City to produce Mr. Eze's iPhone to Plaintiffs' expert, Scott Greene, of Evidence Solutions, Inc., for purposes of conducting a forensic examination of the phone.[1]

### Background

Defendant Lunsford was convicted in state court of voluntary manslaughter in the death of Presley Eze on February 18, 2025. (Doc. 158 at 2). Plaintiffs sought to examine Mr. Eze's iPhone shortly thereafter, on February 21, 2025. *See* (Doc. 82 at 8; Doc. 82-1 at 11 (Plaintiffs' Second Set of Requests for Production of Documents)). The City did not serve a response to that discovery request until April 16, 2025. The City's written response objected to the production of Mr. Eze's mobile phone "because of the potential impact on an ongoing criminal case," asserting that Mr. Eze's mobile phone is evidence in the ongoing criminal case against Defendant Lunsford. (Doc. 82-1 at 11). The City further asserted that, although "the jury rendered a guilty verdict[,] … Lunsford filed a motion for  new trial," and, "[u]ntil the state court denies [that motion], the possibility of a new trial remains on the table." (*Id.*). Moreover, the City continued,

> Lunsford's criminal defense [attorney], Matt Chandler, asked the [LCPD] to hold onto Mr. Eze's mobile phone and process the phone's contents. To date, the LCPD has not yet processed the content of Mr. Eze's mobile phone. With the request having been made by Lunsford's criminal defense attorney, the possibility exists that Mr. Eze's mobile phone may have exculpatory evidence.

(*Id.*).

---

[1] Plaintiffs' Motion seeks to compel production of two cell phones held by the LCPD: "Phone with Black case, item #21,"and "Y-6, Black cell phone and metal clip, item #15." (Doc. 82-1 at 11 (Request for Production ("RFP") #7)). Without explanation, the City's response to RFP #7 referred only to "Mr. Eze's mobile phone." The Court sought clarification at a hearing held on the Motion on August 15, 2025, at which time defense counsel explained that there were two cell phones taken into evidence at the scene of the shooting. The first was a Verizon Android cell phone found in the back seat of the automobile in which Mr. Eze was riding. According to the City's counsel, the Android was "not believed" to belong to Mr. Eze because "it was believed Mr. Eze owned an iPhone." (Doc. 125 at 2-3). The second cell phone was an Apple iPhone 13 Pro Max, which was found on the hood of an LCPD-marked vehicle. (*Id.*). All parties appear to agree that the iPhone 13 belonged to Mr. Eze. Because Plaintiffs have only pursued their request for production of Mr. Eze's cell phone, the Court will not address RFP #7's request to produce the Android cell phone recovered at the scene of the shooting and currently in the LCPD's possession.

Two days after receiving the City's written response, on April 18, 2025, Plaintiffs filed the present Motion seeking to have Mr. Eze's cell phone "examined by an expert to download and extract images and information contained on [it], and returned to evidence." (Doc. 82 at 3). According to Plaintiffs, the cell phone "may have been recording the subject incident, and/or contain information about the decedent." (*Id.*)

Shortly thereafter, on April 30, 2025, LCPD Officer Max Weir supervised a forensic examination of Mr. Eze's iPhone. (Doc. 174 at 4, 5). Although the City's response to RFP #7 had stated that the LCPD had "not yet processed the content of Mr. Eze's mobile phone," as it turns out, Officer Weir's April 30, 2025 examination was the second time that the LCPD had attempted to extract data from the phone. The first attempt had been made more than two years earlier. Officer Weir had retrieved the cell phone from the LCPD evidence room on August 16, 2022 at the request of the LCPD detective investigating Mr. Eze's August 2, 2022 shooting death. Using an extraction tool known as GrayKey, he had attempted to extract data from the iPhone on August 25, 2022. (*Id.* at 5). Officer Weir's first extraction attempt on August 25, 2022 was unsuccessful, as was the second extraction attempt, also using GrayKey, made on April 30, 2025, following Defendant Lunsford's criminal attorney's request that the LCPD "process" the phone's contents.

The City filed its written response to Plaintiffs' Motion on June 1, 2025, at which time the City asserted that it "stands by its objection" to producing Mr. Eze's mobile phone because it is evidence in an ongoing criminal case. (Doc. 104 at 2). Even though the LCPD had by then made a second attempt to extract data from the iPhone, the City's response to Plaintiffs' Motion cited case law in which courts have stayed discovery in civil proceedings when such discovery "could adversely affect ongoing criminal investigations." (Doc. 104 at 3 (citing *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980);

3

*U.S. v. All Funds on Deposit in Suntrust Account No. XXXXXXXX8359, in Name of Gold and Silver Reserve, Inc.*, 456 F. Supp. 2d 64, 65 (D.D.C. 2006); and *In re Ivan F. Boesky Securities Litig.*, 128 F.R.D. 47, 51 (S.D.N.Y 1989)). The City did not specifically argue that the criminal investigation of Defendant Lunsford was ongoing, nor did it explain how the discovery in question "could adversely affect" Defendant Lunsford's ongoing criminal trial proceedings. Nevertheless, the City stated that, in a "show [of] good faith," it had produced "the raw data extracted from Presley Eze's cell phone" to Plaintiffs on May 13, 2025, and that it was "actively working with Plaintiffs' counsel so that they can view the data." (*Id.* at 3-4).

Plaintiffs' reply brief, filed on June 16, 2025, stated that the City had only provided a download of some of the data on Mr. Eze's cell phone, and that a video may have been created by either Mr. Eze or the person with him in the car, which was "not on the download of the iPhone data produced." (Doc. 107 at 3). Further, Plaintiffs argued, the data produced by the City was "incomplete and largely incomprehensible," and the City's download report contained time stamps indicating that "data was being generated on the phone after [Mr. Eze's] death." (*Id.*). Plaintiffs argued that the time stamps suggested the possibility that data on the phone was being spoiled, "creating an even greater need" for an independent forensic examination by Plaintiffs' expert. (*Id.*).

On August 13, 2025, Plaintiffs presented further support for their Motion with the supplemental filing of the Affidavit of Scott Greene, a principal of the forensic evidence examination company Evidence Solutions, Inc. (Doc. 123-1, ¶¶ 2, 7). Mr. Greene stated in his Affidavit that he has over forty years of experience as a technology, computer, and digital forensics professional, and that he is an expert in "the acquisition, preservation, analysis, and presentation of digital evidence, with a specialty in cell phone and mobile device forensics." (*Id.* ¶¶ 3, 6). According to Mr. Greene, the data produced to Plaintiffs by the City indicates that, between August

3, 2022 (the day after Mr. Eze's shooting) and April 30, 2025, there were 4,892 new items generated on the phone. (*Id.* ¶ 28). Mr. Greene further opined there was also a "reference" to a video file created on August 2, 2022 at 16:47:30 (shortly before shots were fired by Defendant Lunsford, killing Mr. Eze), but "[t]his video has no data contained in the file." (*Id.* ¶ 29). Mr. Greene stated that he believed the phone data provided by the City was incomplete, and that he would be able to "confirm and expose more evidence from the device" by inspecting the cell phone at his facility in Tucson Arizona. (*Id.* ¶¶ 31). Mr. Greene represented that no destructive testing would be performed." (*Id.* ¶ 35).

Following Plaintiffs' filing of the Greene Affidavit, on August 1, 2025, the City filed an Affidavit by Officer Weir. *See* (Doc. 124-1 ¶ 1). In his Affidavit, Officer Weir represented that he is a "digital forensics examiner … specializing in cyber investigations and mobile device forensics," a role in which he "routinely preserve[s], acquire[s], and analyze[s] iOS and Android devices using industry-standard tools (e.g., GrayKey, Cellebrite, UFED/Premium, Magnet AXIOM)." (*Id.* ¶¶ 2, 3). Officer Weir stated that he has been unable to gain complete access to the iPhone in question because it was locked with a passcode when the LCPD acquired it. In Officer Weir's opinion, it is not possible to get around the passcode protection on Mr. Eze's iPhone because it uses a version of Apple's iOS operating system that is not supported by either GrayKey or Cellibrite, another extraction device commonly used in the industry. *See* (*id.* ¶ 6f; Doc. 174 at 4).

The Court held a hearing on the Motion on August 15, 2025, at which it expressed concern over Plaintiffs' request to examine the iPhone, given that the phone was being held by the LCPD as evidence in Lunsford's criminal case, which, notwithstanding that a jury verdict was rendered in February, was at that time still pending. Nevertheless, the Court continued its ruling on the cell

phone issue to allow the parties to file supplemental materials. Both parties filed supplemental affidavits of their respective experts. (Docs. 137-1, 145-1). On October 6, 2025, the state court in the criminal proceedings granted Lunsford a new trial. On October 10, 2025, the State filed a notice of appeal from that ruling. (Doc. 158 at 2). On October 31, 2025, the City and Defendant Lunsford filed a motion in this matter seeking a stay of trial pending resolution of the related criminal charges against Defendant Lunsford. (Doc. 158). The stay motion is pending before the presiding trial judge, and neither party has contended that it does or should affect the undersigned's ruling on the present Motion.

Given the on-going criminal state court proceedings, the importance to this case of video evidence at the time of the shooting if such evidence does exist and could be made available, and the opposing opinions of the parties' experts on the question of whether the video could be retrieved from Mr. Eze's iPhone, the Court agreed to conduct an evidentiary hearing at which the parties' competing forensic experts would testify. That hearing was held via Zoom on November 20, 2025. Plaintiffs' forensic expert, Mr. Greene, and the City's forensic expert, Office Weir, testified. At the end of that hearing, the Court gave the parties a preview of its ruling, stating that it intended to issue a written order that would set forth the Court's reasoning in greater detail. (Doc. 174). This memorandum opinion and order is that written ruling.

## Discussion

Pursuant to Rule 26(b)(1) of the Federal Rule of Civil Procedure, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "When determining whether to grant a motion to compel the forensic imaging of a cell phone or other electronic device, courts have considered whether the examination will reveal information that is relevant to the claims and defenses in the pending matter and whether such an examination is proportional to the needs of the case given the cell phone owner's compelling privacy interest in the contents of his or her cell phone." *Hardy v. UPS Ground Freight, Inc.*, No. 3:17-CV-30162-MGM, 2019 WL 3290346, at *2 (D. Mass. July 22, 2019).[2]

There is little doubt that a video taken at the scene of the shooting, if one exists, would be relevant—and indeed, exceedingly important—evidence in this case. The issue therefore is whether the proportionality requirement of Rule 26(b)(1) is satisfied. In most civil cases, the proportionality analysis turns on the weighing of the relevance of the forensic examination against the owner of the cell phone's privacy interest in the contents of the phone. But here, the parties seeking the forensic examination are the ones with the privacy interest. That is, all parties agree that the iPhone in question belonged to Mr. Eze. As Mr. Eze is now deceased, the Estate has stepped into his shoes as the owner of the iPhone. In other words, Plaintiffs, as the personal representatives of the Estate, are seeking to examine a cell phone that belongs to them. Still, despite there being no countervailing privacy interest at stake, this case presents a different countervailing

---

[2] *See, e.g., Dufrene v. Am. Tugs, Inc.*, No. CV 18-554, 2018 WL 6448838, at *3 (E.D. La. Dec. 10, 2018) (denying motion to compel production of cell phones for forensic inspection due to the individual parties' privacy interests where the plaintiff's request for "all cell phone information and data" would "reveal a plethora of irrelevant and potentially highly personal information"); *Ramos v. Hopele of Ft. Lauderdale, LLC*, No. 17-62100-CIV-MORENO/SELTZER, 2018 WL 1383188, at *3 (S.D. Fla. Mar. 19, 2018) (finding that the defendant's request for a forensic examination of the plaintiff's cell phone was not tailored to obtain information that was relevant to any claim or defense in the case, and that the proposed forensic examination was not proportional to the needs of the case or to the plaintiff's privacy concerns); *John Crane Grp. Corp. v. Energy Devices of Tex., Inc.*, No. 6:14-CV-178, 2015 WL 11089486, at *3 (E.D. Tex. Feb. 2, 2015) (denying the plaintiff's motion to compel forensic imaging of computer hard drives because of the inherent privacy concerns).

interest that the Court must weigh against the relevancy of Plaintiffs' request to examine Mr. Eze's iPhone. That countervailing interest stems from the concurrent criminal proceedings against Defendant Lunsford. "The Constitution … does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Dresser Indus., Inc*., 628 F.2d at 1375 (citing cases). "Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem ( ) to require such action, sometimes at the request of the prosecution, * * * sometimes at the request of the defense(.)'" *Id.* (quoting *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). "The court must make such determinations in the light of the particular circumstances of the case." *Id.*

The City argues that a forensic examination of Mr. Eze's cell phone by Plaintiffs would interfere with ongoing criminal proceedings because the phone is being held by the LCPD as evidence in the criminal case against Defendant Lunsford, and, although Lunsford was convicted this past February, the state court has granted him a new trial. Until the state's appeal from the new trial ruling concludes, the City argues, it is unknown whether a second trial will proceed. "Typically, a district court will stay civil proceedings in deference to parallel criminal proceedings" for three reasons: "to protect the criminal defendant's right against self-incrimination, to prevent the criminal defendant or the Government from taking advantage of broader discovery rights available under civil discovery rules, or to avoid revealing the criminal defense strategy to the prosecution." *Sala v. United States*, No. 05-cv-00636 LTB-PAC, 2007 WL 1576146, at *5 (D. Colo. May 30, 2007) (citing *Dresser Indus., Inc*., 628 F.2d at 1376); *see also Hillhouse v. IPFS Corp*., No. CV 24-1855, 2025 WL 1884847, at *4 (E.D. La. July 8, 2025) (civil discovery may be postponed until termination of a criminal action where there is "a real and appreciable risk of self-incrimination," or "to prevent extending criminal discovery beyond the

limits of Federal Rule of Criminal Procedure 16(b), exposing the defense's theory to the prosecution in advance of trial, or otherwise prejudicing the criminal case" (internal quotation marks and citations omitted)). This case does not implicate any of these traditional concerns. That is, Lunsford's Fifth Amendment privileges are not implicated by Plaintiffs' request to examine Mr. Eze's cell phone. Plaintiffs are not parties to the criminal proceeding, so there is no concern about a party to those proceedings using a civil proceeding to get around restrictive criminal discovery. And Lunsford's criminal defense strategy would not be revealed to the prosecution by allowing the discovery in question.[3]

Nevertheless, a delay in permitting Plaintiffs to have the cell phone forensically examined in deference to Lunsford's parallel criminal proceedings might still be warranted if important interests would be served by the delay. To reach this conclusion, the Court must find that the interests served by the delay outweigh Plaintiffs' interest in proceeding with discovery in this civil proceeding. *See Sala*, 2007 WL 1576146, at *4 ("Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936)). Some relevant factors include: (1) the status of the case; (2) the interest of Plaintiffs in proceeding expeditiously with this civil litigation; (3) the potential prejudice to Plaintiffs of a delay; (4) the efficient use of judicial resources; (5) the

---

[3] On the other hand, all of the case cited by the City do involve facts implicating one or more of these three traditional concerns. *See Campbell*, 307 F.2d at 487 (where civil litigant was attempting to make use of the liberal discovery procedures applicable to a civil suit "as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit"); *All Funds on Deposit in Suntrust Acct. No. XXXXXXXXX8359, in Name of Gold & Silver Rsrv., Inc.*, 456 F. Supp. 2d at 65 (finding that "civil discovery would subject the government's criminal investigation to early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding" (internal quotation marks omitted)); *In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. at 49–50 (finding that the complete disclosure demanded in civil proceeding of materials that would not be obtainable under the criminal procedure rules should be temporarily deferred because of possible prejudice to the criminal proceedings and to the public interest concerns in law enforcement).

interests of persons not parties to the civil litigation; and (6) the interest of the public in the pending civil and criminal litigation. *See Sec. & Exchange Comm'n v. Rivelli*, No. Civ. A. 05CV1039RPM, 2005 WL 2789317 at *1 (D. Colo. Oct. 26, 2005) (citing cases). "The movant bears the burden of showing that the requested postponement is necessary." *Id.* As discussed below, "this case reduces essentially to balancing the [City's] claim of prejudice in the absence of a stay against [Plaintiffs'] interest in proceeding expeditiously with the civil litigation and the potential prejudice to [Plaintiffs] of a delay." *Sala*, 2007 WL 1576146, at *5 (internal quotation marks omitted). After weighing the parties' respective interests, the Court finds that the City has not met its burden of justifying the requested delay.

To begin with, it is unclear how the criminal proceedings against Lunsford, even if they are ongoing, would be adversely affected if the Court were to allow Plaintiffs to conduct a forensic examination of Mr. Eze's cell phone. The Court agrees that the LCPD had an intervening right to retain possession of Mr. Eze's iPhone for some period of time to conduct its criminal investigation against Defendant Lunsford. But the LCPD has had three years to conduct that investigation and in that time has forensically examined the cell phone twice. Further, Officer Weir testified that the City has gained all of the evidence from the phone that the City is capable of obtaining with presently existing technology. Additionally, no evidence has been presented that a technological advancement is imminent that would permit the City to gain additional evidence from the cell phone. "[A]bsent sufficient justification, the government has no right to hold onto property that is not contraband indefinitely" *Lindell v. United States*, 82 F.4th 614, 621 (8th Cir. 2023) (citing *United States v. Premises Known as 608 Taylor Ave.*, *Apart. 302, Pittsburgh, Pa.*, 584 F.2d 1297, 1302 (3d Cir. 1978) ("[T]he government may not by exercising its power to seize, effect a De facto forfeiture by retaining the property seized indefinitely.")); *see also United States v. Dennis,* 622

10

F. Supp. 3d 1, 3–4 (S.D.N.Y. 2022) (granting defendant's motion to order government to return his cell phone to him, and rejecting the government's argument that it needed to retain the cell phone in order to "continue its review of the phone's contents, which might provide evidence of the crimes of which [the defendant] is accused," stating that, "[t]he fact that the Government has somehow not completed its extraction and/or review of the earlier communications despite having had more than nine months to do so would be a flimsy excuse for not allowing [the defendant's] repossession of his property, and it invites inordinate delay").

After Officer Weir's initial examination of the iPhone on August 25, 2022, up until and through the first criminal trial, no additional attempts to extract data from the phone were made, whether on the LCPD's own initiative or at the request of either the State or defense counsel in the criminal case. As far as the Court is aware, Lunsford never made a request in the criminal proceedings to inspect the cell phone himself, and neither the prosecution nor the defense sought to introduce the cell phone into evidence during the first criminal trial.[4] The Court also is not aware of any motion in the criminal proceedings filed by Lunsford's new criminal defense attorney following the first criminal trial asking to inspect the cell phone. No party has indicated that the State, as the prosecuting entity in the criminal proceedings, has any interest in conducting further forensic examinations of the cell phone following the first criminal trial, or that the State is opposed to the iPhone being released from the custody of the LCPD for a brief period to allow Plaintiffs to conduct their own independent forensic testing of the phone for purposes of these proceedings. In short, as far as the Court can tell, no party to the criminal proceeding is currently seeking to have the cell phone examined.

---

[4] *See United States v. Dahda*, No. 12-20083-02-DDC, 2020 WL 4192297, at *2 (D. Kan. July 21, 2020) (where government did not object to returning certain items marked as exhibits but not admitted at trial to the defendant following the conclusion of trial, notwithstanding a pending appeal).

Accordingly, the City's argument that the cell phone should remain in the sole possession of the LCPD until the criminal proceedings conclude in their entirety because the phone might be needed as evidence in a second trial is not well taken. The only interest the LCPD has in retaining sole possession of the cell phone, according to Officer Weir, is to ensure that the phone is not physically damaged and that the data it contains is not compromised or destroyed in the event that a means of extracting the data (which according to Officer Wier does not presently exist) is later developed. The data that hypothetically could be extracted at some uncertain point in the future would then be available as potential evidence for a second trial (if one actually occurs).

Initially, the argument advanced by the City seeks to protect not the government's interest in the evidence (even though it is a governmental entity that is holding onto the cell phone), but Lunsford's interest (as well as the City's own interest, which is aligned with Lunsford's in these proceedings). Specifically, the City argues that Mr. Eze's iPhone might contain "exculpatory" evidence, and the City (not the State, on whose behalf the LCPD is holding the cell phone as potential evidence) fears that Plaintiffs' expert could possibly damage or render that evidence inaccessible to Lunsford were he to need access to it in a second criminal trial. But Lunsford's and the City's asserted interest in the iPhone as possible "exculpatory evidence" in the criminal proceedings does not implicate the *public* interest in *law enforcement*, which serves as the justification for a stay of civil proceedings, as discussed in the case law cited by the City. *See, e.g., Campbell*, 307 F.2d at 487 ("There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution …. [that ] requires a government policy determination … [that] gives priority to the public interest in law enforcement."). And while Lunsford is entitled to certain constitutional protections as a criminal defendant, the City has not cited any constitutional right of Lunsford's that potentially could be violated by allowing Plaintiffs

access to Mr. Eze's cell phone to conduct a forensic examination.[5] Nor has the City cited any case law to support an argument that a criminal defendant has a right to access evidence held by a law enforcement agency to the exclusion of litigants in a parallel civil proceeding.[6]

Beyond the above, the City's argument is built entirely on speculation. *See, e.g., Sala*, 2007 WL 1576146, at *7 (concluding that the argument for staying discovery "reduces essentially to Government speculation"). For instance, it is speculation to rely on there being a second trial, and speculation to rely on the possibility that a means for extracting the video might become available at some point in the future. It is further speculation to say that the video on the cell phone could be of such value to Lunsford that it might affect the jury's verdict in a second trial. *See id.* (finding that the "incremental value" of additional evidence that might be obtained following a stay was "both speculative and minimal," and thus that "[t]he prejudice to the Government in proceeding" with the discovery in the civil proceeding was "slight"). More importantly, the City's asserted fear of damage or spoilation of the cell phone is speculative. If a party in the criminal proceedings were to seek to use Mr. Eze's cell phone later in those proceedings, there is no reason to believe that Plaintiffs' prior forensic examination of the phone would interfere with that later use so long as proper steps are taken to maintain a chain of custody over the cell phone in these proceedings. *See, e.g., Vox Mktg. Grp., LLC v. Prodigy Promos L.C.,* 521 F. Supp. 3d 1135, 1147 n.33, 1148 (D. Utah 2021) (stating that, to the extent the defendants "suggest that there was a possibility that alteration

---

[5] *Cf. United States v. Lanham*, No. 3:24-cr-67-CHB-01, 03, 2025 WL 2918046, at *8, 9 (W.D. Ky. Oct. 14, 2025) (rejecting criminal defendant's argument that the "lack of specificity and oversight in tool selection and examiner conduct undermine[d] the constitutionality of the evidence obtained" from government's examination of defendant's cell phone, where "the data was extracted using Cellebrite UFED software, which is specifically designed for this type of extraction and forensic examination of cell phones" (internal quotation marks omitted)).

[6] *Cf. Sala*, 2007 WL 1576146, at *8 ("At most, the Government suggests that its civil case will be prejudiced by its inability to access information from the criminal case. However, the Government does not have a 'special right' to the prosecutor's files; any such access to the [ ] criminal files is a 'windfall, not an entitlement.'"(quoting *Belford Strategic Inv. Fund, LLC v. U.S.*, 2005 WL 3278597 at *3 (N.D. Cal. Nov. 7, 2005)).

occurred because of an allegedly imperfect chain of custody for the Devices, that argument …

goes to weight rather than admissibility" (citing inter alia *United States v. Yeley-Davis*, 632 F.3d

673, 683 (10th Cir. 2011)).[7]

Against the City's speculative reasons for why the criminal proceedings might be

prejudiced if the discovery is allowed here, the Court must weigh the prejudice to Plaintiffs in

delaying a forensic examination of Mr. Eze's iPhone. "In general, the constitution protects

individuals from unlawful, excessive, and unreasonable interference by government agents," and

"[t]he reasonableness of holding onto seized property is not dependent on the government's belief

it has 'an ongoing evidentiary need' … as that might 'in many cases impose an impermissible

burden on a citizen whose property is potential evidence' and be 'tantamount to a forfeiture without

the procedures required by statute and by due process.'" *Lindell,* 82 F.4th at 621 (quoting *Premises*

*Known as 608 Taylor Ave.*). As the Tenth Circuit has held, "[w]hile the government has a

legitimate interest in maintaining control of property relevant to the prosecution and sentencing of

a defendant until his criminal proceedings are final, it must establish the property seized is actually

relevant to that process. The government cannot simply rely on the possibility of resentencing to

---

[7] *See also United States v. Moore*, 71 F.4th 678, 682, 687-88 (8th Cir. 2023) (finding no abuse of discretion in the trial court admitting text message evidence despite defect in chain of custody resulting from series of events in which the cell phone containing the text messages reset itself automatically as a result of the father of the cell phone owner trying to gain access to the phone by guessing the passcode too many times, resulting in call history and many applications being deleted from the phone, but the text messages were restored from the cloud through the backup process); *United States v. Moore*, 425 F.3d 1061, 1071 (7th Cir. 2005) (rejecting the defendant's chain-of-custody argument, and providing that "[a] perfect chain of custody is not a prerequisite to admission, as gaps in the chain normally go to the weight of the evidence rather than its admissibility" (alteration in original) (quotations and citations omitted)); *Lanham*, 2025 WL 2918046, at *10, 11 (rejecting criminal defendants' argument that cell phone data should be suppressed due to multi-agency handling of the cell phones in the time period between the government's seizure of them and when the forensic searches were conducted, stating that defendants presented only "hypothetical risks" that might emerge" and offered no "evidence to substantiate their speculative chain of custody or improper dissemination concerns"); *United States v. Perocier*, 269 F.R.D. 103, 107 (D.P.R. 2009) ("when faced with a chain-of-custody challenge regarding computer data …, the proponent of the testimony need not prove that there was no chance of tampering with or altering the data to establish reliability"); *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc*., 546 F. Supp. 2d 155, 169 (D.N.J. 2008) (rejecting challenge to an expert's testimony "based on the possibility that the underlying data could be altered" where there was "not a shred of evidence to indicate the files were in any way manipulated").

justify retaining all property seized, especially that of an apparently innocuous and irrelevant nature." *United States v. Nelson*, 190 F. App'x 712, 715 (10th Cir. 2006).[8] The LCPD's "continued retention of the phone and all its data raises constitutional issues distinct from the lawfulness of" the LCPD having acquired and retained possession of the phone in the first instance. *Lindell,* 82 F.4th at 621.[9]

To be sure, the Court is not ordering the LCPD to return Mr. Eze's cell phone to the Estate, nor have Plaintiffs requested that the Court do so.[10] The cell phone will be turned over to

---

[8] *See also Mr. Lucky Messenger Serv., Inc. v. United States,* 587 F.2d 15, 17 (7th Cir. 1978) (concluding that when no charges have been filed for 17 months after the property was seized and the government is unable to present evidence justifying such a delay, "constitutional violations emerge which would seem on equitable principles to mandate that the property be returned"); *Dahda,* 2020 WL 4192297, at *2 (where the government argued it was entitled to retain certain seized items that had been marked as government exhibits at trial, including wallets, cell phones, documents, security cameras, and various other personal items, until the defendant's direct appeal and any post-conviction motion to vacate were concluded, court finds that the government's continued retention of the items in question was unreasonable because, although the items were potentially relevant if defendant were to be retried, a retrial was highly unlikely); *In re Grand Jury Subpoena Duces Tecum Issued to Roe & Roe, Inc*., 49 F. Supp. 2d 451, 452–54 (D. Md. 1999) ("Because the Government's evidentiary needs are satisfied, it must articulate some other continuing interest in the property (that outweigh's R & R's interest in its return) in order to lawfully retain the products for evidentiary use. The Court concludes that none of the Government's assertions of a continuing interest in the property entitle it to retain the products on the authority of a seizure or subpoena for evidence when it has satisfied its evidentiary needs and R & R faces severe harm if the Dulles products are kept from it.").

[9] In comparison, in *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 311–13 (S.D.N.Y. 2018), the government seized the defendant's iPhone, which was locked and the defendant refused to provide the passcode. The government had been unable to break the encryption, but argued against returning the cell phone to the defendant, "stating that it was government policy not to return '[c]omputer data that is encrypted or unreadable … unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses." *Id.* at 312. The court found that the government's retention of the iPhone was not illegal and the defendant was not entitled to the iPhone's return, noting that "[t]he Government has only possessed the iPhone in question for a matter of months at this point, hardly a constitutionally significant period of time given the encryption difficulties." *Id.* at 313. In this case, the LCPD has retained the iPhone for years, not months. Moreover, the iPhone is not an instrumentality of the offense, a fruit of any criminal activity, contraband, or otherwise unlawfully possessed, and the State has not claimed that it constitutes "evidence of the subject offense."

[10] Rule 41 of the Federal Rules of Criminal Procedure provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." FED. R. CRIM. P. 41(g). To prevail on a Rule 41(g) motion, the moving party "must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *Pinto-Thomaz,* 352 F. Supp. 3d at 312 (internal quotation marks and citation omitted). Rule 41 does not apply here, however, because the cell phone is being held by state, not federal, authorities. *See, e.g., U.S. v. Burton*, 167 F.3d 410 (8th Cir. 1999) (district court improperly denied motion for return of property seized by city police officers without receiving evidence to determine who had custody or possession of the subject property, where court denied motion based on finding that federal government could not be held responsible for returning movant property if it lacked custody or possession of the property). And it is unclear in any event whether these civil

Mr. Greene, who will conduct his forensic examination of the cell phone, and then return it to the custody of the City. Nevertheless, in determining whether Plaintiffs' interest in a forensic examination of the cell phone outweighs the City's asserted interest in a delay of that discovery request, the Court is concerned with the fact that the iPhone belonged to Mr. Eze, who is the victim of the crime that Defendant Lunsford is accused of having committed. Yet it appears that what is standing between the return of Mr. Eze's property to his Estate is not the State asserting an investigatory or evidentiary interest in the cell phone but the City and Defendant Lunsford asserting that interest. It makes sense for the Court to consider the Estate's ownership interest in Mr. Eze's cell phone in determining whether Lunsford's asserted interest in protecting the phone from potentially being damaged should trump Plaintiffs' interest in having their expert conduct a forensic examination of the phone for purposes of discovery in this case. Defendant Lunsford's interests do not trump the interests of the Estate in having the cell phone examined

Beyond the Estates' ownership interest in Mr. Eze's cell phone, and extremely important to the Court's analysis here, is the fact that the delay the City seeks is open-ended and likely substantial. *See Sala,* 2007 WL 1576146, at *6. The shooting in which Mr. Eze was killed occurred more than three years ago, in August 2022. This civil proceeding was filed on November 3, 2023. Plaintiffs were initially prevented from seeking the discovery in question by the ongoing criminal proceedings. Plaintiffs finally sought the discovery when Lunsford's criminal trial concluded in February 2025. They would have been entitled to that discovery at that time but for Lunsford's filing of a motion for a new trial. With the state court now having granted that motion, there is no

---

proceedings would be the proper forum for a motion for return of seized property. *See, e.g., Black Hills Institute of Geological Res. v. U.S. Dept. of Justice,* 967 F.2d 1237 (8th Cir. 1992) (motion under Federal Rule Criminal Procedure 41(e) is typical instrument to seek return of seized property after indictment has been issued); *In re Certain Pharmaceuticals and Proceedings of Northland Providers, Inc.,* 78 F. Supp. 2d 954 (D. Minn. 1999) (federal courts have recognized independent cause of action for return of property based on their general equitable jurisdiction).

way to know how long the appeal of the state trial court's order will take. And if the new trial order is upheld, it is unknown how long it will take before a second criminal trial is held. If Defendant Lunsford were to be convicted a second time, he could even argue for further delays based on the time it would take for sentencing and then to complete additional appeals from his second conviction.

The fact that a criminal trial has already taken place weighs heavily against delaying the progress of this action, and, under these circumstances, Lunsford's asserted interest in preserving potentially exculpatory evidence on the cell phone for use if the state trial court's order granting Lunsford a new trial were to be upheld on appeal does not justify any further postponement of the requested discovery. Plaintiffs have a strong interest in having this action proceed expeditiously, and the Court's interest in the efficient use of its resources also favors proceeding with this discovery on Plaintiffs' claims against all Defendants. The Court's impression is that Officer Weir has done everything in his power to gain access to the data on the phone. And the Court understands that one of the City's primary arguments against the discovery request is that the forensic examination which Plaintiffs seek to undertake will not be successful in extracting evidence from the cell phone. An aspect of the proportionality determination is whether the party requesting a forensic examination has shown that the data sought likely can be recovered. *See, e.g., Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002). But Plaintiffs' expert testified that there is a reasonable possibility that he could bypass the iPhone's passcode protection and access the video notwithstanding Officer Weir's failed attempts to accomplish the same result. The cell phone belongs to the Eze estate. Plaintiffs are entitled to at least attempt to obtain the video evidence from the cell phone that they think is present on the cell phone.[11] Of

---

[11] *See, e.g., Antioch Co.,* 210 F.R.D. at 652 (allowing access to defendants' computer hard drive to "attempt to resurrect data that ha[d] been deleted" where the defendant's expert attested to the possibility that data could be recovered and

course, in trying, Plaintiffs should not destroy any data. But Mr. Greene's testimony is that his methods for attempting to extract data from the iPhone will not involve putting in additional passcodes that might trigger the phone's disabling or wiping mechanisms. To be safe, the Court will order that no manual attempts to open the screen on the phone using a passcode be made without prior court authorization.[12]

**<u>Conclusion</u>**

The Defendants have not shown that their interest in delaying the forensic examination of the cell phone by Plaintiffs outweighs Plaintiffs' interest in proceeding to attempt to obtain that evidence.

**ACCORDINGLY,** the Court **ORDERS** that:

1.    The City shall produce Mr. Eze's iPhone to Mr. Greene for forensic examination at Mr. Greene's place of business. A chain of custody over the cell phone shall be maintained using the procedures included in Plaintiffs' RFP #7 and Mr. Greene's Affidavits. (Doc. 82-1 at 11; Doc. 123-1 at 4; Doc. 137-1 at 5). That is, the cell phone should be shipped by its current custodian, Officer Weir, who shall maintain sole, documented custody over the phone until it is handed off to Federal Express for shipping. Officer Weir shall ship the cell phone using protective packaging with tracking to:

> Scott Greene
> Evidence Solutions, Inc.
> 333 N. Wilmot Rd. Ste. 340

---

that further delay risked loss of relevant data); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (allowing access to defendant's computer based on a showing that "the probability that at least some of the e-mail may be recovered is just as likely, if not more so, than the likelihood that none of the e-mail will be recovered").

[12] As agreed to by Officer Weir during the evidentiary hearing, Officer Weir is directed to determine any information he can about how many attempts were made to unlock Mr. Eze's iPhone manually using a passcode while the iPhone has been in the possession of the LCPD, whether by him or anyone else, and what the passcodes were that were tried without success. Reasonable efforts should be made to obtain this information within thirty days of entry of this opinion and order, with the information obtained promptly conveyed to Plaintiffs' counsel and Mr. Greene.

Tucson, AZ 85711-2607

Simultaneous with shipping, Officer Weir shall send the Case Code ("KK103"), the Tracking Number, and the expected date of delivery to *hsilva@evidencesolutions.com*. Mr. Greene shall maintain and document the chain of custody over the cell phone upon its arrival to his place of business until Mr. Greene delivers the cell phone to Federal Express for return shipping. While Mr. Greene has possession of the cell phone, he must use appropriate procedures to protect it. No manual attempts to open the screen on the phone using a passcode shall be made without prior court authorization. Mr. Greene should contact Officer Weir to arrange for the cell phone's return in a secure manner with chain of custody protected. Mr. Greene will be allowed to maintain custody over Mr. Eze's cell phone for a reasonable time. If Mr. Greene determines that his forensic examination of the cell phone will require more than four weeks, he shall contact Officer Weir so Officer Weir is aware of what those needs are. Mr. Greene and Officer Weir should then coordinate with each other over the timing for returning the cell phone to Officer Weir upon completion of the forensic examination by Mr Greene. Plaintiffs shall provide the City with logs prepared by Mr. Greene demonstrating what was done during the forensic evaluation and what information or evidence was obtained as a result of Mr. Greene's forensic examination within thirty days of returning the cell phone to Officer Weir.

2.    The Court further orders that the cell phone not be shipped to Mr. Greene until thirty days after the entry of this order. Within two business days after entry of this order, Defendants' counsel shall to give notice of this order to Defendant Lunsford's criminal defense attorney, Matt Chandler, by first class mail, postage prepaid, at 13033 Quaker Avenue, Lubbock, Texas 79423, and by email to *matt@mattchandlerlaw.com*. Defense counsel is further ordered to file a certificate of delivery of the aforementioned notice in the court file of this proceeding. In the event that within thirty days after the entry of this order, Defendant Lunsford's criminal defense

19

attorney obtains an order from a court of competent jurisdiction to promptly undertake and conduct a forensic examination of Mr. Eze's iPhone and a notice of that order is filed in the court file of this proceeding within that thirty-day period, then the deadline for the City to deliver possession of the cell phone to Mr. Greene will be extended for a reasonable time while the forensic evaluation by Defendant Lunsford's expert is conducted. Upon completion of the forensic evaluation by Defendant Lunsford's expert the City shall then promptly deliver possession of the cell phone to Mr. Greene. In the event that Defendant Lunsford does not obtain the aforementioned order and file a notice of that order in the court file of this proceeding within thirty days after this order is entered, then the City shall promptly cause the cell phone to be shipped to Mr. Greene as discussed in paragraph 1 above. Defense Counsel is further directed to keep Plaintiffs' Counsel apprised concerning any developments regarding the cell phone, or the timing of delivery of the cell phone to Mr. Greene.

IT IS SO ORDERED this 5th day of December, 2025.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE